T.C. Summary Opinion 2007-206

UNITED STATES TAX COURT

DOUGLAS W. AND GAIL CAPLE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 22697-04S.          Filed December 10, 2007.

Douglas W. and Gail Caple, pro sese.

<u>Mark D. Peterson</u> and <u>Mark Miller</u>, for respondent.

GOLDBERG, <u>Special Trial Judge</u>:  This case was heard pursuant
to the provisions of section 7463 of the Internal Revenue Code in
effect at the time the petition was filed.  Pursuant to section
7463(b), the decision to be entered is not reviewable by any
other court, and this opinion shall not be treated as precedent
for any other case.  Unless otherwise indicated, subsequent
section references are to the Internal Revenue Code.

This matter arises from a petition for judicial review filed in response to a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 issued for unpaid Federal income tax for taxable years 1993 and 1994.[1]

The issues for decision are: (1) Whether petitioners may contest the liabilities respondent assessed for the taxable years 1993 and 1994, (2) whether respondent properly abated interest and adjusted accuracy-related penalties assessed against petitioners for 1993 and 1994 in accordance with an agreement between the parties, and (3) whether respondent's Appeals officer abused her discretion in rejecting petitioner's offer-in-compromise.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference.

Petitioners resided in Appleton, Wisconsin, on the date the petition was filed. Until 1994, petitioner Douglas W. Caple (Mr. Caple) worked as a night-shift first-aid responder at Ocean Angle Steel, an industrial plant. After leaving this position sometime

---

[1] The outstanding Federal tax owed for taxable year 1993 has been paid in full as a result of respondent's applying petitioners' overpayment refunds from subsequent years to the amount owed for taxable year 1993. Respondent also applied a portion of petitioners' overpayment refunds to the amount owed for taxable year 1994. As of Aug. 21, 2006, the outstanding liability owed for 1994 was $14,670.74.

in 1994, Mr. Caple worked part time both as a school bus driver and as a manager at Best Buy, an electronics retailer. Most recently, Mr. Caple has worked as a day trader of stocks.[2] Petitioner Gail Caple (Mrs. Caple) is employed by Affinity Health Systems as an insurance specialist.

Before Mr. Caple's separation from Ocean Angle Steel, he underwent job-related medical testing that uncovered a condition known as primary sclerosing cholangitis, a terminal disease, the only known cure for which is a liver transplant. At or near the time of Mr. Caple's diagnosis, his father (who was also suffering from an unspecified terminal illness) gave petitioners the funds necessary for Mr. Caple to pay for a liver transplant, provided he were to receive a donor organ. Although petitioners attempted to "shelter"[3] this gift, they later used the funds for unspecified expenses.

Petitioners have one child, Ashley Caple (Ashley), who is a student at the University of Wisconsin at Oshkosh. In addition to paying Ashley's college expenses totaling $14,000 per year (tuition, room, and board), petitioners maintain health insurance coverage for Ashley. Petitioners incurred all medical costs for

---

[2] In 2003, petitioners reported sales in excess of $2 million from Mr. Caple's day trading activity.

[3] This description is petitioners', not the Court's.

Ashley's care that were not otherwise covered by their insurance.[4]

Petitioners' 1993 and 1994 Taxable Years

In taxable years 1993 and 1994, petitioners sold Wal-Mart stock for $57,400 and $56,650, respectively. Petitioners failed to report the proceeds from either sale on their 1993 or 1994 Federal income tax return.

Respondent commenced an examination of petitioners' 1993 and 1994 Federal income tax returns. Following notice that these returns had been selected for examination, petitioners promptly contacted respondent's Appeals Office; they were unable to reach a mutually satisfactory resolution to the matter of petitioners' unreported income.

On December 6, 1996, respondent sent petitioners a notice of deficiency for taxable years 1993 and 1994. The notice of deficiency was sent to petitioners' current address, and it informed petitioners of their right to file a petition for redetermination with the Court no later than 90 days from the date of mailing. Petitioners filed a petition with the Court on July 8, 1997, citing a series of "extra-ordinary [sic] circumstances that prevented [them] from filing" before the 90-

---

[4] Aside from petitioners' testimony regarding Ashley's various medical conditions, and proof of their insurance, the record is devoid of any evidence substantiating the costs petitioners actually incurred with respect to Ashley's medical expenses.

day period for filing had elapsed.  Petitioners cited a series of problems, including:  (1) Mr. Caple's terminal illness,[5] (2) the death of Mr. Caple's father in February 1997, (3) two "stressful lawsuits" of an unspecified nature, and (4) petitioners' "severe" financial problems.

On September 3, 1997, the Court issued to petitioners a notice of filing by respondent of a motion to dismiss for lack of jurisdiction.  Petitioners were required by the notice of filing to file an objection to respondent's motion to dismiss within 20 days; they failed to do so.  On October 8, 1997, the Court granted respondent's motion to dismiss.

Respondent assessed petitioners' Federal income tax owed for taxable years 1993 and 1994, together with interest and penalties, on June 23, 1997.  Respondent's statements of account show that from the date the assessment was made, there occurred a series of payments, credits, additional assessments, and adjustments with respect to both taxable years at issue.  As of May 31, 2004, the date on which petitioners requested that a copy of respondent's statements be mailed to them, the transcripts showed a zero balance remaining for taxable year 1993 and a balance remaining (including interest and penalties) of $21,606.92 for taxable year 1994.

---

[5] Mr. Caple was told by his doctors in 1996 that he had only 2 years to live.

Collections Action and Petitioners' Offer-in-Compromise

On June 24, 2002, respondent filed a Notice of Federal Tax Lien and Your Right to a Hearing Under IRC 6320 showing $1,346.96 owed for taxable year 1993 and $15,346.52 owed for taxable year 1994. Respondent sent to petitioners a Final Notice--Intent to Levy and Notice of Your Right to a Hearing on June 27, 2002.

On August 19, 2002, petitioners mailed to respondent a Form 12153, Request for a Collection Due Process Hearing (CDP hearing). Respondent notified petitioners by letter on September 19, 2002, that he had received petitioners' request for a CDP hearing and, in turn, had forwarded that request to his Appeals Office.

On May 13, 2004,[6] Appeals Officer Beverly A. Roberts (Ms. Roberts) responded in writing to petitioners' request for a CDP hearing. Ms. Roberts informed petitioners that they could request either a face-to-face meeting or a telephone conference. Petitioners requested a telephone conference with Ms. Roberts for their CDP hearing on May 27, 2004.

_____

[6] At trial, respondent acknowledged that for reasons unbeknownst to him, no action had occurred on petitioners' file from September 2002 until May 2004. Our examination of the record, however, indicates that respondent was notified on July 24, 2002, that petitioners were parties in a bankruptcy suit.

During their CDP hearing,[7] petitioners requested that their liabilities for 1993 and 1994 be "dropped" because of Mr. Caple's health status and the "inefficiency of the IRS personnel." Petitioners admitted during the hearing that while they had "sufficient assets" to pay the amounts owed, they had no current income and were living at "the poverty line."[8]

During the hearing, petitioners discussed the general nature of Mr. Caple's illness, but they did not provide Ms. Roberts with any specific documentation relating to his current medical condition and/or prognosis. Petitioners did not provide Ms. Roberts with any documentation relating to Mr. Caple's medical condition following the hearing. Petitioners did provide a written statement detailing Mr. Caple's and Ashley's medical ailments; however, they did not provide any documentation in support of their statements.[9]

---

[7] Ms. Roberts and Mr. Caple exchanged telephone messages before and on May 27, 2004. Sometime in the morning of May 27, 2004, Mr. Caple left Ms. Roberts a voicemail message asking her to "call him back after he got back from his run at 1 p.m."

[8] Petitioners did not provide Ms. Roberts (either before or after the hearing) with evidentiary support for their claim that they were living at the "poverty line." Petitioners did, however, provide a summary of assets to respondent's Appeals Office that showed their total general equity to be $169,570. We note that in 2004, the Federal poverty line for a family of three was set at $15,670. Annual Update of HHS Poverty Guidelines, 69 Fed. Reg. 7336 (Feb. 13, 2004).

[9] Petitioners' only daughter, Ashley, was 16 years old at the time of the hearing. When this matter was before the Court,
(continued...)

Mr. Caple also raised the issue of whether respondent had abated interest and adjusted accuracy-related penalties with respect to their accounts for 1993 and 1994. Respondent had previously agreed to abate interest and adjust the penalties assessed against petitioners, pursuant to an agreement reached between petitioners and respondent's Milwaukee Problem Resolution Office. During the hearing, petitioners questioned whether respondent had, in fact, properly abated the interest and adjusted these penalties per their agreement. Ms. Roberts reviewed petitioners' account records during the hearing and explained to them that these transcripts showed that the section 6662 penalties had been adjusted to zero and the interest had been abated. Per petitioners' request, Ms. Roberts then sent a copy of these account statements/transcripts to petitioners following the hearing.

On June 29, 2004, petitioners submitted to respondent a Form 656, Offer in Compromise (OIC). Petitioners offered to settle the outstanding amount of tax owed by them as follows: (1) A payment of $100 (to be obtained from "checking accounts, investment accounts, and selling autos"[10]), (2) the application

---

[9](...continued)
Ashley was a college student and covered under their health insurance plan.

[10] Petitioners admitted, both during the hearing and when this matter was heard by the Court, that in 1999, they purchased
(continued...)

of "$18,000 in tax credits", and (3) petitioners' expected "future tax benefits."  Petitioners attached five typed pages to their Form 656 explaining their OIC.  In the attachment, petitioners stated that their OIC was reasonable in the light of their protracted dealings with respondent since 1996 and Mr. Caple's and Ashley's extensive medical ailments and the costs associated with their care.

On September 22, 2004, respondent rejected petitioners' OIC on the grounds that petitioners had failed to substantiate their hardship and that they had sufficient assets to pay the amount owed.

On October 27, 2004, respondent issued petitioners a Notice of Determination Concerning Collection Action(s) Under Section 6320, in which respondent determined the notice of Federal tax levy for taxable years 1993 and 1994 to be proper and determined that collection of the tax liabilities for those years should proceed.

On June 26, 2006, respondent issued another notice of intent to levy.  Petitioners filed a "Petition for Redetermination of a

---

[10](...continued)
for $12,000 an antique Porsche that in 2004, had a fair market value of $9,000, and that in 2004, they sold for $14,000 a motor boat that they had owned for several years.  Petitioners maintain that they "refunded" the proceeds from the sale of the boat to Ashley, because they had previously "borrowed" $14,000 from her college fund.

Deficiency" requesting the elimination of all taxes owed, including penalties and interest.

## Discussion

Before a levy may be made on any property or right to property, taxpayers are entitled to a notice of intent to levy and notice of their right to a fair hearing before an impartial officer of the Commissioner's Appeals Office. Secs. 6330(a) and (b), 6331(d). If the taxpayers request a hearing, they may raise in that hearing any relevant issue relating to the unpaid tax or the proposed levy, including challenges to the appropriateness of the collection action and "offers of collection alternatives, which may include * * * an offer-in-compromise." Sec. 6330(c)(2)(A). A determination is then made that takes into consideration those issues, the verification that the requirements of applicable law and administrative procedures have been met, and "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary." Sec. 6330(c)(3)(C).

Petitioners have not argued that any portion of their outstanding tax liability is uncollectible; however, they do argue that they were unfairly denied an opportunity to file a petition with the Court for redetermination of the deficiencies, and that a portion of their liability--the interest and the

penalties applied under section 6662--was not properly abated and adjusted in accordance with the agreement they reached with respondent's Problem Resolution Office.  We will first consider the merits of these arguments.

Petitioners' Right To Contest the Underlying Liability

The Court's jurisdiction to redetermine a deficiency depends upon the issuance of a valid notice of deficiency and the timely filing of a petition for redetermination.  Levitt v. Commissioner, 97 T.C. 437, 441 (1991).  Assuming the Commissioner has issued a valid deficiency notice, section 6213(a) provides in pertinent part that the taxpayer must file a petition with the Court within 90 days of the mailing of the deficiency notice.

Respondent mailed a deficiency notice to petitioners on December 6, 1996.  It is undisputed that petitioners received this notice in due course.  Petitioners failed to file a petition for redetermination within 90 days of the date the notice was mailed.  Because petitioners' reasons as to why they did not file a petition are irrelevant,[11] we hold that petitioners are not entitled to raise as an issue their underlying tax liability.

_____

[11] Petitioners admit their timely receipt of the notice. They stated that the declining health of Mr. Caple's father, and other factors, left them unable to deal with the situation. "Once respondent places the deficiency notice within the taxpayer's grasp * * * [in ample time to file a petition with the Tax Court, respondent] satisfies the requirement of section 6212; if the taxpayer turns a blind eye to that information, she does so at her own peril."  Patmon & Young Profl. Corp., T.C. Memo. 1993-143, affd. 55 F.3d 216 (6th Cir. 1995).

Abatement of Interest and Adjustment of Penalties

Petitioners challenge respondent's collection action on the grounds that respondent did not properly account for an agreement reached between petitioners and respondent's Milwaukee Problem Resolution Office to abate all interest and adjust the section 6662(e) penalty to zero for each of the taxable years at issue. Ms. Roberts testified that the agreement reached between the parties applied to the original assessment only and did not apply to the period after the assessment where petitioners' outstanding liability went unpaid.

Our review of the record[12] indicates that respondent did, in fact, abate interest and adjust the section 6662(e) penalty to zero with respect to the original assessment for each of the taxable years in issue. We believe Ms. Roberts's testimony that the agreement between the parties applied to the original assessment only and not to the period after the assessment through the present. Accordingly, we hold that respondent did properly abate and adjust the interest and the section 6662 penalties with respect to the assessments made for petitioners' 1993 and 1994 taxable years.

---

[12] Specifically, respondent's account statements for petitioners' 1993 and 1994 taxable years. These documents were provided to petitioners, and petitioners offered no evidence to contradict their content.

Rejection of Petitioners' OIC

Because petitioners cannot dispute their underlying tax liability, we review respondent's determination with respect to their OIC under the abuse of discretion standard. See sec. 6330(d); Goza v. Commissioner, 114 T.C. 176, 181-182 (2000).

We find that respondent's rejection of petitioners' proposed OIC was not an abuse of discretion. Respondent's determination was based on all of the information petitioners provided reflecting their financial solvency to Ms. Roberts, respondent's Appeals Officer. See Crisan v. Commissioner, T.C. Memo. 2003-318; Schulman v. Commissioner, T.C. Memo. 2002-129. The Appeals officer reasonably determined, on the basis of petitioners' yearly income ($35,616) and asset value (TD Waterhouse account, $41,301.41; vehicles--including "1995 boat", $59,100; and Mrs. Caple's profit sharing plan, $30,000)--totaling $166,017.41--that petitioners' proposed OIC to pay $100 should be rejected.

In addition to the $100 payment, petitioners also offered "$180,000 in future benefits" as part of their OIC. Unsure of exactly what petitioners meant by this offer, the Court attempted to ascertain petitioners' intent. The Court's query on this matter resulted in the following exchange:

> THE COURT:     These are for future credits, not past credits?
>
> MS. CAPLE:     Future credits.
>
> THE COURT:     Future credits?

MR. CAPLE:                Future credits.

THE COURT:               Well, suppose if, God forbid, both of you passed away, there would be no credits.

MS. CAPLE:                Right.  That's right.  It's not like you're going to need them.

MR. CAPLE:                We would like to apply some of that * * *.

On the basis of the foregoing exchange and Ms. Roberts's testimony explaining why she could not consider "future credits" as part of petitioners' OIC, we consider this portion of petitioners' OIC to be no more than an irrelevant and misguided attempt on their part to satisfy their outstanding tax liability. Ms. Roberts did not abuse her discretion in rejecting this portion of petitioners' OIC.

Finally, and with respect to petitioners' argument that Ms. Roberts refused to consider factors illustrating petitioners' economic hardship and extraordinary medical expenses, we are unpersuaded, on the basis of the foregoing discussion of petitioners' assets, that petitioners were unable to pay the $14,670.74 owed at the time of the hearing.  Second, the record reflects only one letter, dated January 17, 1995, regarding Mr. Caple's medical condition.  Petitioners have provided no additional evidence, aside from their statements (which were neither substantive nor credible), to indicate the impact of either Mr. Caple's or Ashley's medical expenses, although they

admit that both father and daughter were at that time, and still are, covered under their medical insurance policy.

Despite ample evidence to the contrary, petitioners have maintained that they are unable to make more than the $100 proposed in their OIC, an amount that respondent's Appeals officer did not abuse her discretion in rejecting.

We therefore hold that respondent's determination was not an abuse of discretion and that respondent may proceed with his collection of the tax liability by levy upon petitioners' property.

<u>Decision will be entered</u>

<u>for respondent</u>.